**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| MAURICE WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 09-cv-418-DRH |
| | ) | |
| MAJOR HALLAM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# <u>MEMORANDUM AND ORDER</u>

**HERNDON, Chief Judge:**

Plaintiff, an inmate at the Tamms Correctional Center, brings this action for deprivations of his constitutional rights.  This case is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.  Title 28 U.S.C. § 1915A  provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 590 U.S. 544, 570 (2007).  A complaint is plausible on its face "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff's complaint is difficult to review.  The body of the complaint consists of 65 separately numbered, handwritten paragraphs.  Nearly every paragraph of the complaint  refers to and incorporates an exhibit or exhibits.  These exhibits, however, are not attached to the complaint.[1] Indeed, the Court's records indicate that the proposed exhibits have never been filed with the Court. In the absence of the exhibits, the Court is left only with the allegations set forth in the complaint.

According to the complaint, Plaintiff is serving a life sentence without possibility of parole for murdering a 21-year old woman.  Additionally, Plaintiff is serving two consecutive 25-year sentences for attempted murder and for armed violence committed against a 31-year old woman.

On December 1, 2007, after Plaintiff became incarcerated,  Plaintiff submitted a request to be seen by a male mental health professional after "experiencing recurrent nightmares (images of the blood-soaked bodies of . . . [his] female victims), resentment of [his] mother (anger and rage

---

[1]While Plaintiff provided the Court with service copies of his complaint, even the service copies did not include the exhibits.  The total number of exhibits that are claimed to be included in the complaint is 149.

towards women), anti-social thinking . . . and narcissism (the twisted belief that [his] past wrongs were righteous)."  Complaint ¶ F5.

On December 13 and December 19, 2007, Plaintiff was seen by Rocky Peppers, a licensed clinical social worker.  Plaintiff contends that despite requesting help, he "found it difficult to focus" during the sessions with Peppers because of "an unrelated medical issue that . . . was causing [Plaintiff] anxiety and depression."   Complaint ¶ F9.  Plaintiff states that while Peppers did not necessarily agree that the medical issue was preventing Plaintiff from dealing with his other issues, Plaintiff agreed  "that [he] would resolve [his] medical issues and afterwards re-request to be seen by mental health."  *Id.*  Plaintiff states that Peppers "left IDOC/Tamms" on or about December 31, 2007.   Complaint ¶  F10.   Plaintiff contends that he was "not assigned to a mental health professional" following Peppers's departure.  *Id.*

On or about June 2, 2008, Plaintiff sent Defendant Monti a letter stating that Plaintiff "was having (thoughts) of committing extreme acts of violence toward females; . . . [and] request[ing] that a security box and shield be placed on [his] cellfront as a precautionary measure; and . . . plac[ement] on "elevated-security" for the duration of . . . [his] crisis."   Complaint ¶ F15. Accordingly, Monti "immediately had a security box and shield placed on [Plaintiff's] cell" and arranged for Plaintiff to be seen by Defendant Kachigian, a psychiatrist.  Complaint ¶ F16.  Plaintiff claims that Defendant Kachigian advised him that she would get Plaintiff "some help" and "arrange for [Plaintiff] to be seen by other mental health staff to determine [his] need, if any, for psychotropic medications." *Id*.  Plaintiff claims, however, that Defendant Kachigian did neither of those things. Despite this, however, Plaintiff states that on July 19, 2008, "he successfully completed" two anger management exercises given by the Mental Health staff at Tamms as a means of resolving his

"issues against women."  Complaint ¶ F20.

Plaintiff alleges that on August 18, 2008:

> I informed defendant Couch that I was having a crisis.  I did not go
> into details.   Defendant Couch commented that she would
> immediately schedule me to be seen by a mental health professional.
> However defendant Couch deliberately did not record my verbal
> warning.

Plaintiff's Complaint ¶ F21.  Accordingly, Plaintiff was interviewed by Carol Blackman, a licensed

social worker the next day.   Plaintiff acknowledges that Defendant Couch arranged the meeting

with Blackman.  Plaintiff's gripe, however, is that Defendant Couch did not *record* in Plaintiff's file

that he "was in crisis" and needed "help" because of a "conspiracy to ignore, and down-play [his]

mental health issues.  Complaint ¶ F22.

On September 19, 2008, Plaintiff attempted suicide by trying to hang himself.  With regard

to this attempt, Plaintiff claims that the defendants "conspired to prevent [him] from challenging any

and all inaccuracies that may have also been recorded" about his suicide attempt in his prison and/or

medical records.  Complaint ¶ F25.

On November 5, 2008, Plaintiff tried to give Defendant Evans a "a written plea for mental

health care treatment," but she informed Plaintiff that she did not accept "kites."[2]  Complaint ¶ F35.

Plaintiff states that later that evening he "seriously contemplated using [his] . . . razor to cut . . .[his]

jugular vein," but he did not do so after reading from the Book of Job.  *Id*.  Based on these

allegations - and Plaintiff's request to be examined by a "board certified psychologist," it appears

that Plaintiff is attempting to claim that he has been denied adequate treatment for his mental health

problems.  It also appears that Plaintiff is attempting to allege that his medical records contain

---

[2]The Court understands "kites" to be prison terminology for a written note.

4

incorrect information - although nowhere does Plaintiff identify exactly what information he finds to be objectionable.

Switching gears,  the complaint indicates that, prior to July 3, 2008, Plaintiff was subjected to "elevated-security" on an intermittent basis.  Complaint ¶ F11 and ¶F14.  Nowhere in the complaint, however, does Plaintiff describe exactly what "elevated-security" entails.  On July 3, 2008, Plaintiff was moved to the "elevated-security" wing at Tamms where it appears he remains as of the date of the complaint.  Again, the complaint is silent as to what additional restrictions, if any, are placed on Plaintiff when he is on "elevated-security." Plaintiff was transferred to the "elevated-security" wing at Tamms in June 2008 after reporting that he was experiencing "a crisis." Complaint ¶ F15.  Plaintiff claims that his confinement on the "elevated-security" wing and the use of various security measures such as the box and shield violates Due Process of law.  Plaintiff further contends that his continued confinement on "elevated-security" results from a conspiracy and is in retaliation for his filing of grievances.  Complaint ¶ F38.  Plaintiff also claims that he is being subjected to religious and ethnic discrimination by being confined on "elevated-security." Complaint ¶ 46.  At the same time Plaintiff claims he was unjustifiably being confined in an "elevated-security" wing, Plaintiff  alleges that he was "forcibly **removed** from a 'suicide-watch' cell" for allegedly misusing the "Tamms Code-3 Protocol."  Complaint ¶ F32.

The complaint also alleges that the defendants "conspired to [prematurely] terminate" a hunger strike that Plaintiff appears to have commenced while on "elevated-security."  Complaint ¶ F47.  Plaintiff asserts that the conspirators "accept[ed] the testimony of inmate J. Smalley . . . who falsely informed prison nursing and security staff that he'd been 'feeding' [Plaintiff] for the duration of [Plaintiff's] hunger strike" by sending food to Plaintiff under Plaintiff's cell door.  *Id.*  In order

5

to continue his hunger strike free of such accusations, Plaintiff requested to be transferred to "a secure 'crisis-watch' cell," but his request was denied.  *Id*.

## DISCUSSION

**A. Mental health claim**.

 "Deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, "negligence alone, or simple malpractice, is insufficient to state a claim for relief," *Kelly v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990), as is the provision of medical treatment other than that preferred by the inmate.  *Estelle*, 429 U.S. at 107.  *See also Jones v. Simek*, 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements.  The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'"  *Farmer*, 511 U.S. at —, 114 S.Ct. at 1977.  As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  *Id.*  The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference."  *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997)..

Allegations of "refusal" to provide medical care, without more, will not establish deliberate indifference, nor will delay, even if serious injury results.  *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). The Seventh Circuit has found that "the need for a mental illness to be treated could certainly be considered a serious medical need." *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir.

2001); *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983).

According to the complaint, Plaintiff is narcissistic, has antisocial thoughts, and rage towards women. It is not entirely certain that nacrissistic and antisocial personality disorders, standing alone, are serious mental illnesses. *Cf. Gay v. Chandra*, 652 F. Supp.2d 959, 974 (S.D. Ill. 2009) (noting doctor's assertion that prisoner's narcissistic and antisocial personality disorders are not serious mental illnesses, but finding that Plaintiff's ongoing 10-year treatment history combined with his disturbing behavior precluded summary judgment). Additionally, being haunted by the abhorrent crimes one commits would seem to be more naturally associated with a normal "guilty conscious," rather than indicative of a mental disease or defect. Assuming *arguendo* that Plaintiff suffers from an objectively serious "mental illness" requiring treatment, the complaint still fails to allege facts indicating that the Defendants have been deliberately indifferent to Plaintiff's need for mental health treatment.

Plaintiff's first assertion of "deliberate indifference" appears to be that Defendant Caliper did not automatically assign Plaintiff a new mental health professional when Rocky Peppers left Tamms on December 31, 2007. Complaint ¶ F10. However, in the immediately preceding paragraph of the complaint, Complaint ¶ F9, Plaintiff alleged that on December 19, 2007, he and Peppers had determined that Plaintiff would first "resolve" Plaintiff's unspecified, unrelated medical condition - which Plaintiff claimed prevented him from dealing effectively with his mental health issues. After dealing with the unspecified, unrelated medical condition, Plaintiff would "re-request to be seen by mental health." Given this understanding between Peppers and Plaintiff, Caliper's failure to automatically assign Plaintiff a new mental health professional to Plaintiff cannot be said to indicate "deliberate indifference."

7

Plaintiff's other assertion of deliberate indifference appears to be Defendant Evans's refusal to take Plaintiff's "kite" requesting mental health treatment.  Because Evans is not alleged to have taken Plaintiff's note, there's no indication that Plaintiff even knew that the note contained a request for mental health treatment.  Plaintiff has alleged no facts suggesting that the need for mental health treatment was obvious or that there was any outward indication of his internal mental anguish.  More pointedly, even if Evans refused this particular request for mental health treatment, Plaintiff suffered no serious injury due to her refusal.  *Shockley*, 823 F.2d at 1072.  The complaint clearly indicates that although Plaintiff *contemplated* suicide, he was able to quell those thoughts on his own by reading a portion of the Bible.

The complaint indicates that every time Plaintiff reported to prison officials that he was experiencing a "crisis," he was examined by a mental health professional within a short period of time.  Complaint ¶¶ F15, F16, F21, and F22.  Additionally, at several points in the complaint, Plaintiff notes his progress in dealing with his anger, Complaint ¶ F19, his effective utilization of correspondence courses to bring about positive change and rehabilitation, Complaint ¶ F26, his approval for participation in Tamms's Behavioral Incentive program, Complaint ¶ F44, and his improved disciplinary adjustment, Complaint ¶ F51.  In short, the allegations demonstrate that Plaintiff received mental health assistance when he requested it, that he made progress in dealing with some of his mental health issues, and his outward behavior improved.  As such, the complaint fails to indicate that the Defendants were deliberately indifferent to Plaintiff's mental health needs.

**B**. **Due process (elevated-security).**

As noted above, Plaintiff is confined at Tamms Correctional Center.  Tamms is the highest security prison in Illinois.  *Westefer v. Snyder*, 422 F.3d 570, 573 (7th Cir. 2005).  Conditions at

Tamms are intentionally harsh so that the mere threat of being transferred there will deter inmates throughout the Illinois prison system from disobeying prison rules. *Id*. The Seventh Circuit has determined that the conditions at Tamms may pose an atypical and significant hardship in relation to the ordinary incidents of prison life and, therefore, inmates have a protected liberty interest in not being transferred to Tamms. *Id.* at 589-90. In other words, inmates transferred to Tamms must be afforded some due process in order to challenge the decision to house them at Tamms.

The instant case, however, does not challenge the decision to house Plaintiff at Tamms versus some other facility. Instead, this case involves a decision about where *within* Tamms to house an inmate already at Tamms. Specifically, this case concerns the decision to house Plaintiff on the "elevated-security" wing at Tamms rather than some other wing.

There is no independent Constitutionally created liberty interest in avoiding transfer within a correctional facility. *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Meachum v. Fano*, 427 U.S.A 215, 225 (1976). Nevertheless, an inmate has a liberty interest in avoiding placement in more restrictive conditions, such as segregation, when those conditions impose an "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). When, as here, an inmate is already held in the most restrictive prison in the state, then the inmate must show that the additional restrictions of segregation are sufficiently more restrictive than general population at such prison in order be considered "atypical and significant." *Wagner v. Hanks*, 128 F.3d 1173, 1174 (7th Cir. 1997).

The Court assumes that the "elevated-security" wing at Tamms has more restrictions than some other wings at Tamms. But, simply having more restrictions is not sufficient to create a

9

protected liberty interest.  The complaint fails to allege any facts suggesting that  the additional restrictions  imposed on Plaintiff while housed in the "elevated-security" wing at Tamms are so much more restrictive than those imposed on inmates held in general population at  Tamms as to be considered "atypical and significant."  The only restriction identified in the complaint was the use of a "box and shield" placed on Plaintiff's cell.  The Court assumes that a "box and shield" is, in essence, a solid physical barrier placed on the front of Plaintiff's cell.[3]  Such a barrier, by itself, is not sufficiently more restrictive than the mesh doors used on other cells at Tamms.  Therefore, the complaint fails to allege facts stating that Plaintiff's Due Process rights were violated.

**C. Medical records.**

Plaintiff alleges that he has been unable to get access to his full prison record.  Complaint ¶ F33,  ¶ F37, ¶ F40, ¶ F54,¶ F60.  Plaintiff also complains that the Defendants have not made as detailed entries in his record as he would like.  Complaint ¶ F 22.  Finally, Plaintiff asserts that the Defendants have made inaccurate entries in his record.   Complaint ¶ F18.

While inmates have a constitutional right to medical treatment under the Eighth Amendment, *Estelle*, 429 U.S. at 104-05, the Court can find no authority that an inmate has a right to  review his own medical records.  Indeed, what little case law exists indicates no such right exists.  *Provencio v. Fetterhoff*, 2009 WL 5126587, *1 (D. Co. Dec.17, 2009); *Cannon v. Mason*, 2009 WL 588581, *3 (E.D. Okla. March 6, 2009).  Similarly, the Court can find no authority that an inmate has the right to have more detailed entries made in his medical records or to have erroneous entries in his medical records corrected or expunged.  Perhaps Illinois has state regulations granting prisoners

---

[3]The cells at Tamms are described as having mesh doors, rather than solid steel doors. *Westerfer v. Snyder*, 422 F.3d. 570, 588 (7th Cir. 2005).

access to such record, but the mere failure of prison administrators to follow Illinois state law does not rise to the level of a constitutional violation. *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Therefore, Plaintiff's claims concerning his medical records should be dismissed.

### D. Hunger strike.

Plaintiff alleges that "prison officials . . . conspired to terminate [his] hunger strike prematurely" because they believed that Plaintiff had been secretly receiving food from another inmate. It is unclear exactly how Plaintiff's hunger strike was ended because the complaint does not contain that information. The gist of Plaintiff's claim, therefore, is not the manner in which his hunger strike was ended (e.g., being force fed), but the fact that it was ended. While non-incarcerated people who are sane have a liberty interest in refusing to eat, prisoners either have no such right or it is easily overcome. *Freeman v. Burge*, 441 F.3d 543, 546-47 (7th Cir. 2006). At some point, prison officials would have had a duty and the right to step in and force Plaintiff to take nourishment. *Id*. at 547. Again, there is no indication that the hunger strike was ended by force. Moreover, Plaintiff's allegation that his hunger strike was terminated "prematurely" is the type of conclusory legal statement that the Court does not need to accept as a well-pleaded fact. *Brooks*, 578 F.3d at 581. Consequently, Plaintiff's allegations concerning his hunger strike fail to state a claim upon which relief may be granted.

### E. Discrimination (religion and race).

Plaintiff alleges that Defendants Parrish and Hallam discriminated against him on the basis of his religion and ethnicity because they moved another inmate - one having fewer disciplinary tickets than Plaintiff - from the elevated-security wing after only four months. Complaint ¶ F46.

11

The complaint, however, fails to allege any facts supporting these bald assertions. There are no allegations even indicating Plaintiff's religion or ethnicity or, for that matter, indicating the religion or ethnicity of the other inmate. Again, without any factual support, the Court is not obliged to accept Plaintiff's conclusory statements. *Brooks* 578 F.3d at 581. Therefore, Plaintiff's allegations fail to state a claim upon which relief may be granted.

**F. Conspiracy.**

Throughout the complaint, Plaintiff alleges that the Defendants conspired to deprive him of adequate medical care or Due Process of law. Conspiracy is not an independent basis of liability in § 1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996). Having determined that Plaintiff did not state a claim for denial of adequate medical care or for being denied Due Process of law, Plaintiff's conspiracy claims must also fail.

**G. Malicious**.

The Court finds that the instant complaint should be dismissed as "malicious" under 28 U.S.C. § 1915A(b)(1). A complaint is malicious if it is "plainly abusive of the judicial process." *Crisafi v. Holland*, 655 F.2d 1305, 1309 (D.C. Cir. 1981). A complaint is abusive when brought "to pursue ends other than the vindication of claims believed to be meritorious." *Free v. United States*, 879 F.2d 1535, 1536 (7th Cir. 1989); *see also Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir.1999) (a complaint may be dismissed as malicious where it is undertaken not to rectify any cognizable harm, but only to harass the defendant). When determining whether an action is malicious, the Court need not look only to the complaint before it, but may also look to a plaintiff's prior litigious

conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *cf. Walton v. Walker*, 2010 WL 376322 (7th Cir. Feb. 4, 2010) (district court entitled to draw upon its familiarity of prisoner plaintiff's prior litigation).

Looking solely at this complaint, the Court notes the numerous instances where Plaintiff has failed to support his conclusory statements and bald assertions with any facts. In other places, Plaintiff's claim of a constitutional violation is contradicted by his fact allegations. For example, Plaintiff's claim that he is being denied adequate treatment for his mental health issues, Complaint ¶ F30, is wholly undercut by Plaintiff's fact allegations indicating that he has been given extensive treatment for these issues, Complaint ¶¶ F15, F16, F21, and F22. Asserting claims that have no factual basis is an abuse of the judicial process.

Moreover, the Court observes that Plaintiff occasionally *requested* placement in "elevated-security" at Tamms.[4] Complaint ¶ F15. Thus, the complaint indicates that there were times when Plaintiff wanted to be housed on additional restrictions and then, a day or two later, Plaintiff no longer wished to be subjected to the additional restrictions (or complained that he did not know why the additional restrictions were being imposed on him). As such, Plaintiff appears to be subjecting Defendants to an unending "Catch-22." If prison officials did not put him on "elevated-security" when he was experiencing a "crisis" (and, possibly, suicidal), Plaintiff would be in a position to claim that prison officials violated the Eighth Amendment by not preventing him from harming himself. When prison officials have placed Plaintiff on "elevated-security," Plaintiff claims a violation of his Due Process rights. Given Plaintiff's admitted tendency to twist his "wrongful

---

[4] He also appears to object to being taken *off* "suicide watch" - a type of confinement that is usually quite stark. Complaint ¶ F32.

13

actions into righteous" ones, it appears that Plaintiff is pursuing these claims not to vindicate his constitutional rights, but solely for the purpose of harassing prison officials.

Going beyond the instant complaint, the Court's records indicate that within a three-month period (March 2009 to June 2009), Plaintiff filed the instant case plus the following civil rights actions: *Wallace v. Powers*, Case No. 09-224-DRH (S.D. Ill. filed March 24, 2009); *Wallace v. Miller*, Case No. 09-342-JPG (S.D. Ill. filed May 5, 2005); *Wallace v. Parrish*, Case No. 09-362-GPM (S.D. Ill. filed May 12, 2009); and *Wallace v. Cobb*, Case No. 09-448-MJR (S.D. Ill. filed June 12, 2009).[5]   Each of these cases involves multiple defendants[6] and multiple claims.

In cases 09-224, 09-342, and 09-159, Plaintiff has filed approximately 555 exhibits. Although no exhibits were actually filed in the instant case, Plaintiff's complaint indicates that he would have filed an additional 149 exhibits in this case which would have raised the total number of exhibits filed by Plaintiff to 704.  Many of these exhibits are (or are alleged to be) grievances or correspondence to prison officials and other public officials concerning Plaintiff's experiences at Tamms.  This is an astonishing number of exhibits to have accumulated over the two and a half year time period covered by the complaints.  As noted above, Plaintiff is serving a sentence of life imprisonment without possibility of parole followed by two consecutive 25 year terms of imprisonment.   These complaints and the exhibits indicate that Plaintiff is occupying his considerable free time by attempting to bury prison officials in an avalanche of paper.

Based on the cases that Plaintiff has filed in this Court, it appears that Plaintiff is attempting to continue his harassment of prison officials at Tamms by dragging them into a number of

---

[5]Case No. 09-448 was voluntarily dismissed by Plaintiff.

[6]The number of defendants named in each action ranges from 12 to 21.

14

protracted legal battles.  While many of Plaintiff's salvos have missed their marks - for example, this Court has already dismissed Case No. 09-224 as frivolous - the sheer number of claims and defendants combined with liberal pleading rules almost ensures Plaintiff of having some limited success.  When, as here, Plaintiff's claims fail to survive threshold review, it indicates that Plaintiff is using litigation for an improper purpose.  Therefore, the instant complaint is dismissed on the alternative ground that the action is malicious under § 1915A(b)(1).

## DISPOSITION

In summary, Plaintiff's complaint does not survive review under § 1915A.  Accordingly, this action is **DISMISSED** with prejudice.  Plaintiff is advised that the dismissal of this action will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  All pending motions are **DENIED** as moot.

**IT IS SO ORDERED.**

**DATED:** February 23, 2010.

/s/   DavidRHerndon
**DISTRICT JUDGE**

15